**PASCO TERMINALS, INC.**

v.

**UNITED STATES.**

**C.D. 4676; Court No. 74-5-01357.**

United States Customs Court.

Dec. 1, 1976.

Williams, Connolly & Califano, Washington, D. C. (J. Alan Galbraith, Washington, D. C., of counsel), for plaintiff.

Rex E. Lee, Asst. Atty. Gen., Washington, D. C. (Velta A. Melnbrencis, New York City, trial atty.), for defendant.

MALETZ, Judge.

Plaintiff has moved for rehearing of the decision rendered by the court granting defendant's motion to dismiss this action. *Pasco Terminals, Inc. v. United States,* C.D. 4658, 416 F.Supp. 1242, 76 Cust.Ct. 204 (1976). As ground for the motion, plaintiff claims that the court has misapprehended the facts with respect to the commercial transactions involving the shipments of crude sulphur herein. It further claims that the court was misinformed as to the particulars of entry 003575 and that, despite information to the contrary listed by the customs broker on the consumption entry (and despite statements by plaintiff's attorney at the oral argument on defendant's motion to dismiss), the merchandise on that entry was actually exported on November 11, 1971 from Coatzacoalcos, Mexico aboard the H. H. *Jaquet*[1] voyage 153, along with the merchandise covered by entry 062A, and was "discharged" at Thompson's Point, New Jersey on or about November 16, 1971.

Various affidavits, copies of bank statements, checks, invoices and other papers are attached to plaintiff's memorandum in support of its motion for rehearing and to its reply memorandum to defendant's memorandum in opposition. The memoranda and attachments constitute an attempt by plaintiff to respond, with the aid of evidentiary materials available at all times, to statements in the court's opinion concerning the actual nature of the alleged commercial transactions upon which the four involved entries were based.

Although plaintiff's proffered papers do not set forth matters upon which the court might ordinarily exercise its discretion to grant a rehearing,[2] they were examined to

---

1. The ship's name is spelled *Jacquet* by plaintiff in its memorandum and reply memorandum in support of the motion for rehearing.

2. See *W. J. Byrnes & Co., Inc., et al. v. United States,* 68 Cust.Ct. 358, C.R.D. 72-5 (1972) for a succinct statement setting forth grounds for rehearing.

ensure that the ends of justice would be served.

The court finds that, far from establishing the claimed "actual facts" as to Pasco's alleged role as importer and consignee, the supporting papers are rife with inconsistencies, raise new questions and, in general, confirm this court's previously stated conclusions.

One example (out of many) stems from an analysis of the invoicing procedures utilized by plaintiff and Azufrera. As corroboration of its claim that the merchandise on entry 003575 was shipped on the Jaquet voyage 153, plaintiff has attached to its reply memorandum on the motion for rehearing a *newly produced* set of *Azufrera* invoices to *Pasco* covering the shipments herein, one of which lists a *November 10, 1971* shipping date on Jaquet voyage 153 for the merchandise allegedly covered by entry 003575. All of these invoices, it is noted, are made out to Pasco Terminals, Inc., Tampa, Florida for shipments of sulphur to DuPont, either at Thompson's Point or Deepwater Point, New Jersey and charge $28.00 per long ton. The other pertinent data shown on these invoices are summarized as follows:

| Date Shipped | Shipped Via | Description: Crude Sulphur in Bulk: Quantity in L/T | Date of Invoice | [Entry: Not Shown on Invoice] |
|---|---|---|---|---|
| 11/10/71 | H.H. Jaquet 153 | 6320.080 | 11/23/71 | [003575] |
| 11/10/71 | H.H. Jaquet 153 | 4077.002 | 11/23/71 | [062A] |
| 11/30/71 | H.H. Jaquet 154 | 2515.650 | 11/30/71 | [004007] |
| 11/30/71 | H.H. Jaquet 154 | 1279.000 | 11/30/71 | [066A] |

The invoices were submitted with the following explanation by counsel for plaintiff (reply memo., p. 5, note 5):

These invoices were not heretofore produced because it was not noticed that there was a discrepancy between them and those which the United States already had in its possession. The initial invoices (Exhibit 1 to the McCauley affidavit) were prepared on the indicated dates (November 9, December 6), prior to the entry of the Jacquet on Voyages 153 and 154 (November 16, December 9); they were used in preparing the Consumption Entry forms. It should be noted that the quantities set forth on these invoices are in rounded numbers: *e. g.,* 6400, 4000 (Voyage 153); 2500, 1324 (Voyage 154). The other invoices (Azufrera to Pasco, Exhibit A hereto; Pasco to DuPont, Defendant's Collective Exhibit I to its brief in support of its motion to dismiss) show precise quantities (6320.080, 4077.002 (Voyage 153); 2515.60, 1279.000 (Voyage 154). These invoices were prepared after the Jacquet had discharged its cargo (November 16 for Voyage 153, December 9 for Voyage 154) because they clearly reflect actually delivered quantities as measured at the discharge port. A completely precise invoice could not be prepared before these discharge quantities became known. * * *[3]

**3.** As a point of reference, the *first* set of *Azufrera* invoices was made out to Pascos [sic] Terminal, for shipments to Pascos [sic] Terminal (not DuPont), either at Deepwater Point or Thompson [sic] Point, N. J. and show a charge of *$28.50* per long ton. These invoices are summarized as follows:

| Date Shipped | Shipped Via | Quantity in L/T | Date of Invoice | [Entry: Not Shown on Invoice] |
|---|---|---|---|---|
| 11/11/71 | H.H. Jaquet | 6400 | 11/9/71 | [003575] |
| 11/11/71 | H.H. Jaquet | 4000 | 11/9/71 | [062A] |
| 11/30/71 | H.H. Jaquet | 2500 | 12/6/71 | [004007] |
| 11/30/71 | H.H. Jaquet | 1324 | 12/6/71 | [066A] |

The curious aspect of the foregoing is plaintiff's insistence (quoted above) that the newly produced set of *Azufrera* invoices "clearly reflect actually delivered quantities as measured at the discharge port" and that a "completely precise invoice could not be prepared before these discharge quantities became known." These statements cannot be reconciled with the data listed on *Pasco's* invoices to DuPont, nor do they square with two of plaintiff's newly produced invoices of *Azufrera* to Pasco.

Considering first *Pasco's* invoices to Du-Pont, Pasco had invoiced DuPont as follows for crude sulphur delivered either at Deep-water Point or Thompson's Point, N. J., charging *$28.50* per long ton:

| Shipped Via | Quantity in L/T | Date of Invoice | [Entry: Not Shown on Invoice] |
| --- | --- | --- | --- |
| H.H. Jaquet 153 | 6320.080 | 11/10/71 | [003575] |
| H.H. Jaquet 153 | 4077.002 | 11/10/71 | [062A] |
| H.H. Jaquet 154 | 2515.650 | 11/30/71 | [004007] |
| H.H. Jaquet 154 | 1279.000 | 11/30/71 | [066A] |

As indicated above, Pasco's invoices to DuPont for the sulphur shipments entered under entries 003575 and 062A are dated *November 10, 1971,* which is (assuming *arguendo* that plaintiff's claims as to the exportation and importation dates of the shipment on entry 003575 are correct) the *date of exportation* of the sulphur; these invoices also show the *"precise quantities"* of sulphur (identical to those listed on Azufrera's newly produced invoices) which were delivered some *six days later* to DuPont on or about November 16, 1971. Similarly, Pasco's invoices for shipments listed on entries 004007 and 066A are dated *November 30, 1971,* which is also the *date of exportation,* and again set out exact quantities of sulphur which were discharged *eight and nine days later* at Thompson's Point and Deepwater Point.

It is also noted that the two newly produced *Azufrera* invoices covering entries 004007 and 066A are dated *November 30, 1971* and bill Pasco for shipments exported *that same date* and list the precise quantities of sulphur which were discharged *over a week later* at the aforementioned ports in New Jersey. Furthermore, they are dated six days earlier than the "initial" Azufrera invoices of December 6, 1971 covering the same shipment. See note 3, *supra.*[4]

In short, despite the fact, as stated by counsel for plaintiff, that "completely pre-cise invoice[s] could not be prepared before * * * [the] discharge quantities became known" "as measured at the discharge port," Pasco's invoices to DuPont and two of plaintiff's newly produced invoices from Azufrera to Pasco do actually set forth the *completely precise discharge quantities* notwithstanding that each of such invoices was *dated at least six days before the discharge of the sulphur* was even effected.

The net effect of the foregoing (among other things) is to raise the most serious questions about the authenticity of *Pasco's* invoices to DuPont and *Azufrera's* invoices to Pasco. And this in turn casts even more doubt about the bona fides of the status of Pasco as a reseller. At the very least, it must be concluded from the hodgepodge of conflicting and irreconcilable dates, prices, invoices and statements that the plan to relieve DuPont of any liability for payment of antidumping duties was never intended to be and, in fact, never amounted to, more than a clumsily executed bookkeeping exercise.

The motion for rehearing is denied.

---

4. It is observed, too, that the second set of Azufrera invoices list a price of $28.00 per long ton whereas the earlier ones billed Pasco at $28.50 per long ton.